1  BENNEE B. JONES
   Texas State Bar No. 17855450
2  benneejones@akllp.com
   BUENA VISTA LYONS
3  Texas State Bar No. 00797630
4  THERESA GEGEN
   Texas State Bar No. 00793791
5  1717 Main Street, Suite 3700
   Dallas, Texas 75201
6  (214) 659-4400
7  (214) 659-4401 (Fax)

8  JASON M. KERR
   Resident Nevada Counsel
9  Nevada Bar No. 7773
   jkerr@lrlaw.com
10 LEWIS AND ROCA LLP
   Suite 600
11 3993 Howard Hughes Parkway
12 Las Vegas, Nevada 89109
   (702) 949-8200
13 (702) 949-8351 (fax)

14 Attorneys for ATX Technologies, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR AN ORDER AUTHORIZING THE ROVING INTERCEPTION OF ORAL COMMUNICATIONS | CCA 171, LDG (FIELD CASE) |
|---|---|

UNDER SEAL: ATX'S MOTION TO RECONSIDER AND MOTION TO QUASH, OR ALTERNATIVELY, MOTION TO MODIFY THE COURT'S ORDER

COMES NOW ATX Technologies, Inc. ("ATX") and respectfully requests this Honorable Court to reconsider and to quash or alternatively modify its order dated December 10, 2001, in the criminal cause No. 171X, LDG (field case), and in support of such motion states as follows:

**I.   Procedural Background.**

The Court's *ex-parte* order purports to require ATX to provide assistance to the FBI for a

-1-

period of thirty (30) days in the interception of oral communications. This order is an extension of a previous ex-parte order, which ATX complied with, in providing assistance to the FBI. The previous order was signed on November 21, 2001 and expired on November 30, 2001. The current (renewal order) was signed on December 10, 2001 and faxed to ATX on December 11, 2001, and purports to require assistance for up to 30 days from December 10, 2001.

## II.  **Factual Background.**

ATX designs and responses an electronic security and communications device for Mercedes-Benz of North America, Inc. called the Tele Aid system.  ATX is a small company that is not yet profitable. In conjunction with the Tele Aid system ATX staffs a 24 hour response center to respond to the needs of its subscribers. (Aff. of Jensen, ¶ 4 attached hereto as Ex. A).

The Tel-Aid equipment is built into certain Mercedes-Benz automobiles for the purpose of providing security and convenience features to the vehicle owners. This equipment functions in combination with Global Positioning Satellites and cellular telephone technology to provide the customer with a variety of security and convenience features, such as obtaining emergency responses in the event of an accident, directions, roadside assistance, and stolen vehicle location. (Aff. of Jensen, ¶ 3, 5).

The Tele Aid system is designed to be a safety and security system which is solely responsive and reactive to consumer input. Once the automobile purchaser subscribes to the Tele Aid system, the equipment permits three types of assistance:

(1) the Tele Aid system will automatically call the ATX response center upon deployment of the vehicles' airbags or initiation of the vehicle's supplemental restraint system;

(2) the subscriber can press a button in the automobile to call the ATX response center to secure roadside assistance in the event of an accident or break down, or receive information about locations (including directions), driving conditions and weather; or

(3) the subscriber can request ATX to assist in locating the automobile, if stolen.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

-2-

8888.1

(Aff. of Jensen, ¶ 5).

The primary function of the ATX response center and the Tele Aid system is to provide security and safety for the subscriber vehicle owners. Therefore, the Tele Aid system automatically prioritizes calls. Calls involving use of an airbag or restraint system in an accident situation or those calls in which a customer presses an "SOS" button requesting assistance, are priority one calls, and may cut off other calls (for example those involving requests for driving information or to locate stolen vehicles). (Aff. of Jensen, ¶ 6). The ATX response center personnel are not just phone operators; rather, they are specially trained to handled requests for emergency assistance and to work with local emergency response providers (for example 911 and local police) to ensure that subscribers who have been in an accident receive adequate assistance. (Aff. of Jensen, ¶ 7).

Because of the coordination that must be done with local emergency response providers and the injured parties, responding to an emergency call can require the full attention of up to three ATX response center operators. (Aff. of Jensen, ¶ 8).

As a secondary response, ATX can assist the subscriber in locating a stolen vehicle on verification that a police report has been filed. To locate the vehicle, the response center sends a signal to the Tele Aid system in the automobile. The signal will be continuously sent until the automobile responds or until the stolen vehicle recovery mode is manually deactivated. (Aff. of Jensen, ¶ 9). It is important to note that in stolen vehicle recovery mode, the Tele Aid system will not respond if the automobile's engine is turned off or the automobile is shielded due to atmospheric or geographic conditions which normally prevent cellular connections from being completed (for example by a tunnel or a garage). If the automobile's engine is running and not shielded, the Tele Aid system in the automobile will call the ATX response center. (Aff. of Jensen, ¶ 10). The return call from the automobile will go into the ATX response center's proprietary network and telecommunications hardware system, where it is directed to the next

1  available operator. The ATX response center does not have any way to determine when a call will
2  come or to direct the call to a specific operator. (Aff. of Jensen, ¶ 11).
3  
4  Once a call from the Tele Aid system in the automobile is answered by the ATX response
   center personnel, the personnel should be able to hear noises (including conversations) inside of
5  
6  the automobile. If there are no intervening circumstances, the call remains connected until the call
7  is terminated by the response center upon confirmation from law enforcement that the vehicle has
8  been recovered.(Aff. of Jensen, ¶ 12). Intervening circumstances such as the automobile's engine
9  being shut off, the occurrence of shielding or atmospheric interference, or a higher priority call
10 being received would result in termination of the recovery vehicle call. If the call is disconnected,
11 the ATX response center must begin the process of attempting to contact the automobile all over
12 again to reconnect. (Aff. of Jensen, ¶ 13). As explained above, ATX only initiates contact with
13 
14 the automobile at the request of a subscriber in the event that the vehicle has been stolen and after
15 confirmation of a police report regarding the theft having been filed. ATX, as a matter of practice
16 and policy, will not initiate vehicle recovery without proof that the crime of vehicle theft has
17 occurred. (Aff. of Jensen, ¶ 14).
18 **III.  Argument and Authorities.**
19 
20 A.  *The ex parte order violates the due process rights of ATX, and therefore it must be quashed.*
21 The *ex parte* order violates the due process rights of ATX. The order was issued without
22 any notice or right to be heard by ATX. The order requires ATX to provide "information, facilities
23 and technical assistance" to the FBI. The order requires ATX to commit personnel and equipment
24 to the government without prior notice or an opportunity to be heard. Therefore, the order
25 
26 constitutes a deprivation of property in violation of the Fifth Amendment of the United States
27 Constitution. *Application of the Unites States of America v. Mountain States Telephone &*
28 *Telegraph Company,* 616 F.2d 1122, 1132-33 (9th Cir. 1980); *Application of the United States of*

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

-4-

8888.1

*America v. Bell Tele. Co.*, 610 F.2d 1148, 1156-57 (3rd Cir. 1979).

In both *Mountain States Telephone* and *Bell Telephone Co.*, the courts held that a telephone company has a right to notice and hearing *before* the court issues an *ex parte* order requiring its assistance in intercepting communications.

In this case, ATX was not notified before the first order was issued. ATX received notice of the order on the Wednesday evening before Thanksgiving, after management office hours, and complied with the seven day duration of the order, rather than risk sanctions for non-compliance in the absence of readily available legal assistance during the Thanksgiving holiday weekend. ATX again received no prior notice of or opportunity to be heard on the second order.

To the extent that 28 USC 2518 appears to allow the Court to issue an *ex parte* order against both the subject of the investigation *and* any "provider of wire or electronic communication response, landlord, custodian or other person" (see 2158(4)), the statute violates the due process rights of the innocent third party. As to the subject of the investigation, the statutory framework provides detailed procedural protections to ensure that his or her rights are not violated, including a full development of the facts supporting probable cause, authorization for the order by the Attorney General, and detailed review by the court. However, the statute provides no such protections for the innocent third party (in this case ATX). And ATX truly is an innocent third party because, unlike a telephone company whose responses and equipment may have been used to perpetrate a criminal act, the ATX Tele Aid system cannot be used to further or to assist in perpetrating a crime by virtue of the limited functions of which it is capable.

Because the *ex parte* order violates ATX's due process rights, it should be quashed.

B.   *ATX cannot reasonably provide the requested assistance*

ATX moves to quash the court's order pursuant to 18 USC 2518(12), which provides as follows:

A provider of wire or electronic communications response that has received an

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

-5-

8888.1

order as provided for in subsection (11)(b) may move the court to modify or quash the order on the ground that its assistance with respect to the interception cannot be performed in a timely or reasonable fashion.

Specifically, the Court's order provides that ATX is to furnish the FBI with "all information, facilities and technical assistance necessary to accomplish these interceptions unobtrusively and with minimum interference to the locations and response to be intercepted." However, based on the manner in which the ATX equipment functions, it is not possible to comply with the court's order in a reasonable fashion.

First, as explained above, ATX's primary function is to provide emergency assistance to its subscribers. Dedicating personnel to support the FBI's efforts will hamper ATX's ability to provide the responses on which its subscribers rely for their safety and security. Unlike telephone companies, ATX is a small company that has yet to show a profit. ATX does not have the number of required personnel to provide the support necessary to comply with this order. Unlike typical electronic monitoring which can be set up to run continuously (for example a tap in a phone line or a bug in a room), the Tele Aid system requires continuous ATX operator assistance and the oversight of supervisory personnel to monitor oral communications. The Tele Aid system is not designed to do the type of continuous monitoring the FBI seeks. Because the Tele Aid system only works when the automobile is running, ATX personnel will have to make multiple attempts to contact the vehicle in order to catch it running. If the automobile is turned off or encounters interference or shielding, the ATX response center personnel will again have to continuously attempt to contact the automobile to reestablish the connection. (Aff. of Jensen, ¶ 10-12, 16, 17).

In effect, compliance with the Court's order will require ATX to dedicate operators specifically to assist the FBI. ATX does not have the requisite number of personnel to do this and to serve its customers on which it depends for survival. (Aff. of Jensen, ¶ 16).

Second, because ATX cannot control or identify on which line the call from the Tele Aid system will come, ATX will have to train each of its operators on special procedures to handle the

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

-6-

8888.1

FBI's requests. For example, each operator would have to be instructed that the incoming call should be held and a supervisor contacted, contrary to the normal established procedure for stolen vehicle recovery. The supervisor in turn would have to contact the FBI in order to begin the surveillance process by identifying the particular line on which the call comes in. (Aff. of Jensen, ¶ 17). Not only would this be costly and impractical, it will also hamper ATX's ability to keep the information about the monitoring secret. Additionally, the calls themselves will create airtime usage which is automatically invoiced to subscribers, thus making it impossible to keep the intended target of the surveillance from finding out that the vehicle was using airtime during the periods of surveillance. Even if ATX issued a credit for the airtime charges, the subscriber's automatically generated invoice would show a credit notation which may raise questions for the subscriber, who would then contact ATX's customer care center, meaning that ATX would have to train the entire customer care department on how to respond to this one customer. (Aff. of Jensen, ¶ 19).

In summary, the Tele Aid system was designed to aid customers in emergency situations and to only be responsive when contacted from the automobile by its subscribers. It is not designed to continuously monitor oral conversation in an automobile. To provide such responses would require ATX to give special training to its regular operators and other employees to assist the FBI. Providing this type of continuous response, which is outside the normal scope of ATX's operation and outside of the operations that ATX personnel are trained to provide, is prohibitively burdensome and expensive to ATX and detracts from the business of ATX, which is to provide emergency assistance to its customers.

C.  *Compared to the burden on ATX, the value of the information the FBI can obtain is very limited.*

The government must show that "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

2518(1)(c). The purpose of this provision is to ensure that this intrusive means of investigation is not used lightly. *Cf. United States v. Caruso,* 415 F.Supp. 847 (S.D. NY 1976), *aff'd,* 553 F.2d 94 (2nd Cir. 1977) (table). In this case, compared to the burden on ATX, the value of the information the FBI can obtain is very limited.

First, ATX complied with the Court's initial order, and apparently no valuable information was gained by the FBI.

Second, the system is of limited use to intercept oral conversations. It only works when the vehicle's engine is running, when there is no interference or shielding, and when the conversations or noises actually occur inside the automobile. In short, the time required and the very limited opportunity for success makes the FBI's request entirely unreasonable and, if granted, unlikely to succeed.

Third, even though the statute provides for compensation for "reasonable expenses", it is unlikely that the monetary reimbursement can make ATX whole. For example, any amount paid as reasonable expenses could not be expected to compensate for the disruption to ATX's responses and the expenses that are difficult to quantify, such as training time and time developing and disseminating new policies to employees. Therefore, the result of this order is an unconstitutional taking without just compensation, and the order must be quashed. United States Const. Fifth Amendment; *see also Mountain States Telephone,* 616 F.2d 1133 (stating that one of the factors that the court should consider in determining whether an order compelling assistance should be upheld is "the likelihood that the company can be fully compensated for the responses provided).

D.   *Alternatively, ATX requests that the Court limit the scope of the order.*

The court's order as it currently stands requires ATX to be ready to assist the FBI at any time and for unlimited periods of time during the next 30 days. This is overly broad and unreasonable. Even though ATX believes that any requirement that it assist the FBI in this investigation is unduly burdensome, especially considering the limited benefit to the government,

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

1  if ATX is compelled to assist the FBI, it requests the Court limit its order to a time and frequency
2  of no greater than one, continuous three hour period every seven days.
3      WHEREFORE, ATX requests that this Court Quash the Order dated December 10, 2001
4  requiring ATX to provide certain assistance to the FBI; or, alternatively, that the Court limit the
5  order as specified above.
6      DATED this 20th day of December, 2001.

RESPECTFULLY SUBMITTED,

LEWIS AND ROCA LLP

Resident Nevada Counsel:

By: _____
Jason M. Kerr
Nevada State Bar No. 7773
Jkerr@lrlaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89109
(702) 949-8200


ANDREWS & KURTH L.L.P.


Bennee B. Jones
Texas State Bar No. 17855450
Buena Vista Lyons
Texas State Bar No. 00797630
Theresa Gegen
Texas State Bar No. 00793791
1717 Main Street, Suite 3700
Dallas, Texas 75201
(214) 659-4400
(214) 659-4401 (Fax)

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

8888.1

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that service of the foregoing ATX'S MOTION TO RECONSIDER AND MOTION TO QUASH, OR ALTERNATIVELY, MOTION TO MODIFY THE COURT'S ORDER was made this date by hand-delivering a true copy of the same at Las Vegas, Nevada, addressed to the following:

Mr. Eric Johnson
United States Attorney's Office
Organized Crime Strike Force
333 Las Vegas Blvd, South
Suite 5000
Las Vegas, NV 89101
(702) 388-6563

DATED this 20th day of December, 2001.

*Florence Desiderio*
An Employee of Lewis and Roca LLP

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

8888.1

Ex. A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | § | |
| OF THE UNITED STATES FOR AN ORDER | § | CCA 171, LDG |
| AUTHORIZING THE ROVING INTERCEPTION | § | (FIELD CASE) |
| OF ORAL COMMUNICATIONS | § | |

UNDER SEAL:
AFFIDAVIT OF HAL JENSEN

STATE OF TEXAS          §
                       §
COUNTY OF DALLAS       §

Before me, the undersigned authority in the State of Texas, personally appeared Hal Jensen, for ATX Technologies, who testified as follows:

1. My name is Hal Jensen. I am over eighteen (18) years of age, am competent to make this affidavit, and I have personal knowledge of the facts stated herein. I swear that the facts in this affidavit are true and correct.

2. I currently work for ATX Technologies, Inc. ("ATX") as the Chief Operating Officer. I have been employed by ATX since October 1, 2000. In this capacity, I am responsible for the daily operations of all aspects of the business of ATX including ATX's mobile response operating system.

3. ATX designs and services an electronic security and communications device for Mercedes-Benz of North America, Inc. called the Tele Aid system. The Tele Aid system uses both Global Positioning Satellite (GPS) and cellular technology and is built into certain Mercedes-Benz automobiles for the purpose of providing security and convenience features to the vehicle owners.

4. In conjunction with the Tele Aid system, ATX staffs a 24 hour response center located in Irving, Texas to respond to the needs of its subscribers. In general terms, the Tele Aid

1

system allows communication between the occupants of equipped vehicles and the response center maintained by ATX.

5. The Tele Aid system is designed to be a safety and security system which is solely responsive and reactive to consumer input. Once the automobile purchaser subscribes to the Tele Aid system, the equipment permits three types of assistance:

(1) the Tele Aid system will automatically call the ATX response center upon deployment of the vehicles' airbags or initiation of the vehicle's supplemental restraint system;

(2) the subscriber can press a button in the automobile to call the ATX response center to secure roadside assistance in the event of an accident or break down, or receive information about locations (including directions), driving conditions and weather; or

(3) the subscriber can request the ATX response center to assist in locating the automobile, if stolen.

6. The primary function of the ATX response center and the Tele Aid system is to provide security and safety for the subscriber vehicle owners. Therefore, the Tele Aid system automatically prioritizes calls. Calls involving use of an airbag or restraint system in an accident situation or those calls in which a customer presses an "SOS" button requesting assistance, are priority one calls, and may cut off other calls (for example those involving requests for driving information or to locate stolen vehicles).

7. The ATX response center personnel are not just phone operators; rather, they are specially trained to handled requests for emergency assistance and to work with local emergency service providers (for example 911 and local police) to ensure that subscribers who have been in an accident receive adequate assistance.

8. Because of the coordination that must be done with local emergency service providers and the injured parties, responding to an emergency call can require the full attention of up to three ATX response center operators.

9. As a secondary service, ATX can assist the subscriber in locating a stolen vehicle on verification that a police report has been filed. To locate the vehicle, the ATX response center sends a signal to the Tele Aid system in the automobile. The signal will be continuously sent until the automobile responds or until the stolen vehicle recovery mode is manually de-activated.

10. The Tele Aid system will not respond if the automobile's engine is turned off or the automobile is shielded by atmospheric or geographic conditions which normally prevent cellular connections from being completed (for example a tunnel or garage). If the automobile's engine is running and not shielded, the Tele Aid system in the automobile will call the ATX response center.

11. The return call from the automobile will go into the ATX response center's proprietary network and telecommunications hardware systems, where it is directed to the next available operator. The ATX response center does not have any way to determine when a call will come or to direct the call to a specific operator.

12. Once a call from the Tele Aid system in the automobile is answered by the ATX response center personnel, the personnel should be able to hear noises (including conversations) inside of the automobile. If there are no intervening circumstances, the call remains connected until the call is terminated by the response center upon confirmation from law enforcement that the vehicle has been recovered.

13. Intervening circumstances such as the automobile's engine being shut off, the occurrence of shielding or atmospheric interference, or a higher priority call being received would result in termination of the recovery vehicle call. If the call is disconnected, the ATX response center must begin the process of attempting to contact the automobile all over again to reconnect.

14. ATX only initiates contact with the automobile at the request of a subscriber in the event that the vehicle has been stolen and after confirmation of a police report regarding the theft having been filed. ATX, as a matter of practice and policy, will not initiate vehicle recovery without proof that the crime of vehicle theft has occurred.

15. ATX is a small company that is not yet profitable. Any activity outside of the ordinary scope of ATX's operations which would require ATX to dedicate personnel, equipment and facilities outside of ATX's normal operations would significantly draw on ATX's limited resources. Moreover, conducting the type of work the FBI has requested will divert the time and efforts of response center management, specialists, and account management. All of these efforts and costs will further impair ATX's ability to become profitable and to effectively and timely deliver services to our subscriber customers.

16. In effect, compliance with the Court's order will require ATX to dedicate operators specifically to assist the FBI. ATX does not have the requisite number of personnel to do this and to serve its customers on which it depends for survival.

17. ATX cannot control or identify on which line the call from the Tele Aid system will come, therefore, ATX will have to train each of its operators on special procedures to handle the FBI's requests. For example, each operator would have to be instructed that the incoming call should be held and a supervisor contacted, contrary to the normal established procedure for

stolen vehicle recovery. The supervisor in turn would have to contact the FBI in order to begin the surveillance process by identifying the particular line on which the call comes in. Not only would this be costly and impractical, it will also hamper ATX's ability to keep the information about the monitoring secret.

18.    The monitoring calls will create airtime usage which is automatically invoiced to subscribers, thus making it impossible to keep the intended target of the surveillance from finding out that the vehicle was using airtime during the periods of surveillance. Even if ATX issued a credit for the airtime charges, the subscriber's automatically generated invoice would show a credit notation which may raise questions for the subscriber, who would then contact ATX's customer care center, meaning that ATX would have to train the entire customer care department on how to respond to this one customer.

Further, Affiant says not.

_____

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the 18th day of December, 2001.

_____
Notary Public in and for the State of Texas

Printed Name: PATRICK OKOYE

Commission Expires: ___




5