1  BENNEE B. JONES
   Texas State Bar No. 17855450
2  benneejones@akllp.com
   THERESA GEGEN
3  Texas State Bar No. 00793791
   1717 Main Street, Suite 3700
4  Dallas, Texas 75201
   (214) 659-4400
5  (214) 659-4401 (Fax)                           **UNDER SEAL**

6  FRED PETTI
   Arizona Bar No.011668
7  JASON M. KERR                      **FILED**
   Resident Nevada Counsel
8  Nevada Bar No. 7773
   jkerr@lrlaw.com                       FEB - 8 2002
9  LEWIS AND ROCA LLP
   Suite 600
10 3993 Howard Hughes Parkway      CLERK, U.S. DISTRICT COURT
   Las Vegas, Nevada 89109             DISTRICT OF NEVADA
11 (702) 949-8200                  BY_____DEPUTY
   (702) 949-8351 (fax)

12
   Attorneys for ATX Technologies, Inc.
13
                   UNITED STATES DISTRICT COURT
14
                   FOR THE DISTRICT OF NEVADA
15
   IN THE MATTER OF THE APPLICATION        §
16 OF THE UNITED STATES FOR AN ORDER       §        CCA 171XX, LDG
   AUTHORIZING THE ROVING INTERCEPTION     §        (FIELD CASE)
17 OF ORAL COMMUNICATIONS                  §

18
      UNDER SEAL: ATX'S MOTION TO RECONSIDER AND MOTION TO QUASH,
19   THE COURT'S JANUARY 11, 2002 ORDER AND TO RECONSIDER THE COURT'S
            ORDER DATED DECEMBER 21, 2001 DENYING ATX'S MOTION
20               TO QUASH THE DECEMBER 10, 2001 ORDER

21      ATX Technologies, Inc. ("ATX") respectfully requests this Honorable Court to

22 reconsider its December 21, 2001 order denying ATX's Motion to Quash the Court's December

23 10, 2001 order in the CCA 171, LDG.    ATX further moves the Court to quash its January 11,

24 2002 extension of its December 10, 2001 Order.  Lastly, ATX moves the Court to deny an

25 additional request sought by the Government for further extensions under 18 U.S.C. § 2518(5).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337901.3

1                              17128.1

1  In support of such motion states as follows:

2  ## I.  Procedural Background

3  The Court's January 11, 2002 *ex-parte* order again requires ATX to provide assistance to

4  the FBI for a period of thirty (30) days by using its Tele Aid System to intercept oral

5  communications in a customer's vehicle.  This order is an extension of two previous *ex-parte*

6  orders.   The first, signed on November 21, 2001 and having a term of only 7 days, ATX

7  complied with.  The second, signed on December 10, 2001 and having a term of 30 days, ATX

8  resisted by filing a motion requesting the Court to reconsider and quash the order, or

9  alternatively to modify it.  The Court held a hearing where ATX argued that  (1) ATX could not

10  reasonably comply with the secrecy provisions of the order; (2) the order was unreasonably

11  burdensome; and (3) Title III did not authorize the order.  By written order dated December 21,

12  2001, the Court denied ATX's motion to quash the December 10, 2001 order.

13  ATX has now been served with a third order, dated January 11, 2002, which requires

14  ATX to provide assistance for up to 30 days.

15  ## II.  Motion to Quash and to Reconsider

16  ATX moves to quash this third order and requests the Court to reconsider its December

17  21, 2001 order denying ATX's Motion to Quash the December 10, 2001 order.[1]

18  *A.    New Facts Learned From Monitoring.*

19  First, after the hearing on December 21, 2001, ATX was again asked to assist the FBI.

20  ATX did so.  While rendering the assistance, ATX learned for the first time that it is not possible

21  

22  [1] ATX's request for the Court to reconsider its December 21, 2001 order denying ATX's Motion to Quash the December 10, 2001 Order is not moot, even though the December 10, 2001 Order has expired.  As noted, the government has sought and received an additional order (the January

23  11, 2001 Order) requesting ATX's assistance in intercepting oral communications.  Therefore, such order fits within the exception for mootness to "short term orders capable of repetition, yet

24  evading review." *See, e.g., Application of the United States v. Bell Tele. Co.*, 610 F.2d 1148 1153 (3rd Cir. 1979) (applying rule to orders requiring telephone companies to assist with the

25  government with tracing phone calls).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337901.3

2

17126.1

1  to ensure that the customer (and other persons in the vehicle at the time of the monitoring) will

2  not detect the monitoring. Upon cessation of the monitoring, when the vehicle recovery mode is

3  turned off, one of two things enable the customer to know that vehicle recovery has been

4  deactivated and that the Tele Aid has been activated:

5

6   (i)  If the radio in the vehicle is on at the time the vehicle recovery mode is turned off, the radio will be muted and its text and graphics screen will display an icon reading "Tele-Aid Active" on the front panel;

7

8   (ii)  If the radio is not on when the vehicle recovery mode is turned off, the Tele Aid system will emit a beeping tone. This tone will be emitted whether or not the vehicle is running at the time the vehicle recovery mode is turned off.

9

10  Because these messages are a function of the Tele Aid physical unit, ATX can not stop the Tele-

11  Aid equipment from signaling the customer that it has been activated.[2]  (Stovall Aff. ¶ 22)

12      Second, unlike the OnStar system that the Court is familiar with in its own automobile,

13  the Tele-Aid System does not have the Personal Calling feature which allows the driver to make

14  telephone calls through the system. The Tele-Aid System only allows communication with the

15  call center (Stovall Aff. at ¶ 13).

16      ATX has provided a detailed factual statement to assist the Court as Exhibit A.

17  *B.*      *Title III Does Not Authorize the Use of ATX Tele Aid System.*

18      *1.*      *The Assistance Requested by the Government is Not the Type of Assistance Contemplated by 18 U.S.C. 2518.*

19

20

21

22  [2] ATX did not know about this feature before because prior to this case, ATX has never been required to conduct vehicle recovery under an order of secrecy. ATX does not manufacture or

23  install the equipment. ATX tested the equipment using the stolen vehicle recovery mode in response to the requested monitoring to further determine whether secrecy could be maintained.

24  ATX learned about this feature for the first time on January 8, 2002, and it immediately informed the government (through Assistant United States Attorney Eric Johnson) of this issue.

25

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337901.3

3

171281

1    When Congress enacted the Electronic Communications Privacy Act of 1986, it

2  recognized that not all forms of assistance were required by the Act.  In the legislative history to

3  the Act, Congress noted:

4         Telephone companies have, as a matter of practice, provided information
       and technical assistance to law enforcement officials in connection with lawfully
5       authorized wiretaps.  *They have steadfastly maintained, however, an important
       distinction between such technical assistance and any active participation in the*
6       *wiretap itself.*  Section 2518(4) of title 18 is a codification of the cooperative
       working relationship that exists between telephone companies and law
7       enforcement officials.  This section anticipates that these government officials
       will, and should, seek the cooperation of telephone companies in accomplishing
8       telephone line interceptions.
              Nevertheless, telephone company customers have a reasonable
9       expectation, traditionally enhanced by telephone company practices and policies,
       that their company will not become in effect, a branch of Government law
10      enforcement. Accordingly, *while technical assistance is provided and paid for,*
       *the Committee wishes to make clear that Section 2518(4) is not intended to*
11      *authorize and should not be construed as authorizing, issuance of an order for*
       *land line telephone company assistance which either requires a company to*
12      *actually accomplish or perform a wiretap or requires that law enforcement*
       *wiretap activity take place on land line telephone company premises.*

13
                                        ***
14
              *To ensure that the practice does not change, absent a compelling need*
15      *appropriately addressed to Congress,* the Committee expects the Justice
       Department to include in its United States Attorneys Manual a statement that no
16      enforcement agency or official shall attempt to compel any telephone company
       employee to perform any wiretap, or attempt to compel any such company to
17      make its premises available for wiretap activity.  Any proposed amendment to
       that language should be reported to the Committee well in advance of
18      dissemination so that the Committee has sufficient opportunity to assess both the
       extent of which such proposed language comports with its view of the scope of
19      section 2518(4) as expressed above and the extent to which any amendment of
       section 2518(4) to permit a change in prevailing practice may be warranted by
20      subsequent and compelling changes in technology or other circumstances.

21  S. Rep. 99-541, at 29-30 (1986), reprinted in 1986, U.S.C.C.A.N. 3555, 3583-3584 (emphasis

22  added).

23      Congress specifically warned that there were limits to the assistance the government may

24  require.  Congress warned that if the technology to be used requires a change in the type or

25  manner of assistance requested by the government then only Congress may address that issue.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337901.3

17126.1

1   And, in fact, assistance and new technologies have been addressed by Congress in several

2   subsequent laws, including the Communications Assistance for Law Enforcement Act (CALEA),

3   47 U.S.C. 1001, *et seq.*; the Provide Appropriate Tools Required to Intercept and Obstruct

4   Terrorism ("Patriot") Act of 2001; and the Anti-Terrorism Act of 2001. Significantly, none of

5   these new laws provides authority for the government to require that a business that operates a

6   call center (like ATX) provide assistance in intercepting an oral communication in the manner

7   the government now seeks.

8        Here, the government is *not* requesting ATX to provide technical assistance so that it can

9   intercept a communication that is being made through the ATX device in the automobile.

10  Rather, the government is requesting ATX to conduct a covert listening operation – this is more

11  than the assistance contemplated by the law. The government is *not* requesting ATX to tap into a

12  telephone conversation that was initiated by the customer or anyone else in the vehicle. Rather,

13  the government is asking ATX to signal the vehicle, so that the Tele Aid equipment in the

14  vehicle will call in to the response center and allow someone to listen in on oral communications

15  that take place in the vehicle. This type of action goes far beyond mere technical assistance to

16  enable the government to accomplish an interception. Rather, it requires ATX to actually initiate

17  and accomplish the interception from ATX's call center on behalf of the government at any time

18  the government requests during the Order period. This is not the type of assistance that is

19  contemplated by 18 U.S.C. 2518.

20       The government has alternative methods to obtain the information it seeks through ATX.

21  The government can ask for, and this Court can authorize, under the surreptitous installation of a

22  licensing device into the vehicle to permit the government to intercept the targeted oral

23  communications. In other words, ATX's involvement is not necessary for the government to

24  obtain the information it seeks.

25  ///

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

DAL:337901.3

5

17126.1

2.    *The Order Results in an Impermissible Blending of the Wire, Electronic and Oral Communication Provisions of Title III.*

The government's request results in an impermissible blending of the provisions of Title III. The government is authorized to intercept telephone communications and is authorized to place a "bug" in a location to intercept oral communications. The question is whether Title III permits the government to require ATX to intercept oral communications taking place in a car? The answer is no.

Under 18 USC § 2518(3), the Court may authorize the interception of wire, electronic or oral communications. However, Title III does not authorize the Court to order that oral communications be intercepted via a wire transmission.

The history of Title III also supports this. In 1967, the Supreme Court held in *Katz v. United States,* 389 U.S. 347 (1967) that the Fourth Amendment applied to Government interception of a telephone conversation.   At the same time, the Court extended Fourth Amendment protection to electronic eavesdropping on oral conversations in *Burger v. New York,* 388 U.S. 41 (1961).  Congress responded by authorizing Government interception of wire and oral communications in Title III of the Omnibus Crime, Control and Safe Streets Act of 1968 (18 U.S.C. § 2510 *et seq.*).

In 1986, Congress passed the Electronic Communications Privacy Act ("ECPA") to amend "the 1968 law to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technology." *See* S. Rep. 99-541, at 2 (1986), reprinted in 1986 U.S.C.C.A.N. 3555.  Congress recognized the tremendous advances in telecommunications and computer technology made available technological advances in surveillance devices and techniques making it possible for overzealous law enforcement agencies to impermissibly intercept both personal and proprietary communications. Id. at 3, 3557. In an effort to ensure that the law advanced with technology to ensure the continued vitality of the

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337901.3

6

17126.1

1   Fourth Amendment, Congress amended Title III to add a new category of covered

2   communications ("electronic communications"). Id. at 5, 11-35, 3559, 3565–3589. After 1986,

3   communications taking place over a pager, computer, or facsimile machine were protected under

4   Title III. Id.; see also 18 U.S.C. § 2510 (12).

5          In passing ECPA Congress recognized the need to amend Title III to make it clear that

6   the Government may only intercept the electronic communications via a wiretap under the

7   provisions of Title III. Congress also recognized that technological advancements can and do

8   out pace the privacy protections afforded individuals under Title III. This is what has happened

9   in the instant matter. The technology developed by ATX makes it possible to intercept oral

10  communications in a vehicle though cellular telephone technology.   An oral communication is

11  an utterance by a person under circumstances exhibiting an expectation that the communication

12  is not subject to interception. In essence, an oral communication is one carried by sound waves,

13  not by an electronic or wire medium. Congress has not authorized the Government to use either

14  wire or electronic communications to intercept oral communications. Until Congress elects to

15  amend Title III to permit such an interception of oral communications, this Court is not

16  authorized to require ATX to assist the FBI. Accordingly, the Court should quash the orders

17  requiring ATX's assistance.

18         3.    The Order's Secrecy and Minimization Requirements Exceed the Burden Allowed
                 by Law.

19

20         In order to comply with the Court's order, ATX must fundamentally restructure its

21  business and change the manner in which it conducts business. Court's do not have unfettered

22  discretion to order assistance of private companies. United States v. New York Telephone

23  Company, 434 U.S. 159, 172; 54 LEd 2d 376 (1977) (courts may not impose unreasonable

24  burdens on private company).

25         Because of the manner in which the Tele Aid system is automated and operated, ATX

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337901.3

7

17126.1

1   cannot ensure compliance with the portion of the Court's order that requires ATX not to disclose

2   "the order, the request for assistance, or the existence of this investigation, to any other persons

3   other than those of their agents and employees who require this information to accomplish the

4   services hereby ordered."  In fact, it has been over two months since ATX complied with the

5   original order for monitoring, and ATX is still wrestling with issues about how to keep the fact

6   of the monitoring secure.  ATX's additional concerns are as follows:

7           *a.      System Automatically Indicates to Car's Occupants that Tele Aid was
                     Active.*

8

9           As explained above, ATX has discovered the Tele Aid equipment in the

10  automobile automatically signals the occupants of the car that theft recovery has ceased and the

    system has been re-activated by either a tone or a muting of the radio and a visual signal.  It is

11  clear that despite its best efforts, ATX cannot comply with the secrecy provisions of the order.

12          *b.      Client Database and File is Not the Property of ATX and ATX Employee's
13                   are Not the Sole Point of Contact for Customers' Calls.*

14          ATX does not own the client data base and is not the only company that can

15  respond to customer's requests.  The client data base is owned by a Mercedes Benz subsidiary

16  that runs a telephone response center in Montfort, New Jersey.

17          When the customer's call goes to the call center in New Jersey, the operators in

18  the New Jersey call center pull up the same information as that in Texas which shows the

19  monitoring activity as Tele Aid in a vehicle recovery mode.  ATX has no control over the New

20  Jersey operators and no way of knowing what they may say to the customer if he or she calls.  In

21  fact, under the Court's orders, ATX cannot even tell the New Jersey company about the issue.

22  Further, since ATX does not own the data in the shared data base, ATX cannot be sure what uses

23  will be made of it.

24                                  III.  Conclusion

25          For all of the above reasons, ATX moves this Court to reconsider its Order of December

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337901.3

17126.1

1  21, 2001, requiring ATX to continue to provide assistance to the Government in connection with

2  the interception of certain oral communications.  Moreover, ATX asks the Court to quash its

3  January 11, 2002 extension of the December 10, 2001 Order requiring such assistance, and to

4  deny any further requests for extensions filed by the Government pursuant to 18 U.S.C. §

5  2518(5).

6                                    RESPECTFULLY SUBMITTED,

7                                    ANDREWS & KURTH L.L.P.

8                                    By: _____

9                                        Bennee B. Jones
                                         Texas State Bar No. 17855450

10                                       Theresa Gegen
                                         Texas State Bar No. 00793791

11                                       1717 Main Street, Suite 3700
                                         Dallas, Texas 75201

12                                       (214) 659-4400
                                         (214) 659-4401 (Fax)

13
                                         FRED PETTI

14                                       Arizona Bar No. 011668
    Resident Nevada Counsel:            Jason Kerr

15                                       Nevada  State Bar No. 7773
                                         jkerr@lrlaw.com

16                                       LEWIS AND ROCA, LLP
                                         3993 Howard Hughes Parkway, Suite 600

17                                       Las Vegas, Nevada 89109
                                         (702) 949-8200

18

19

20

21

22

23

24

25

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337001.3

9

171126.1

1    CERTIFICATE OF SERVICE

2          Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that service of  UNDER SEAL: ATX's

3    MOTION TO RECONSIDER AND MOTION TO QUASH, THE COURT'S JANUARY 11,

4    2002 ORDER AND TO RECONSIDER THE COURT'S ORDER DATED DECEMBER 21,

5    2001 DENYING ATX'S MOTION TO QUASH THE DECEMBER 10, 2001 ORDER was

6    made this date by hand-delivering a copy at Las Vegas, Nevada, to the following:

7          Mr. Eric Johnson
           United States Attorney's Office
8          Organized Crime Strike Force
           333 Las Vegas Blvd, South
9          Suite 5000
           Las Vegas, NV 89101
10         (702) 388-6563

11         DATED this 8th day of February, 2002.

12

13                                        _Florence Desiderio_
                                          An Employee of Lewis and Roca LLP
14

15

16

17

18

19

20

21

22

23

24

25

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:337901.3

17126.1

Ex. A

1          EXHIBIT "A":   Factual Background

2     *A.     General Background Related to ATX*

3          ATX is not a telephone company and does not provide its customers with cellular air time

4     that would allow the customer to make mobile phone calls.  ATX is a very small company

5     (approximately 300 employees) and has very limited resources.

6          ATX staffs a 24 hour response center to respond with information and assistance to

7     customers who contact ATX through the Tele Aid equipment.  The Tele Aid equipment is built

8     into certain automobiles (including Mercedes Benz) [the term "Tele Aid" is exclusive to

9     Mercedes—other OEM's call it other things] for the purpose of providing security and

10    convenience features to the vehicle owners.  This equipment functions in combination with

11    Global Positioning Satellites and cellular technology to provide the customer with a variety of

12    security and convenience features through two distinct call centers, such as obtaining emergency

13    responses in the event of an accident,  directions, roadside assistance, and stolen vehicle location.

14    The Tele Aid system is manufactured by Motorola and installed by Mercedes Benz.  Any cellular

15    airtime that is used by the customer is supplied by AT&T – not ATX.  Unlike the OnStar system

16    that the Court is familiar with in its own automobile, the Tele Aid system does *not* have the

17    Personal Calling feature.[3]

18          The Tele Aid system is designed to be a safety and security system which is solely

19    responsive to an airbag deploying or the customer pushing one of the three buttons described

20    below.  Once the automobile purchaser subscribes to the Tele Aid system, the equipment permits

21    the following types of assistance:

22

23    _____

24    [3] The Personal Calling feature in the OnStar system allows the driver to make hands free, voice
      activated calls from the automobile.  In contrast, the Tele Aid System does not allow the driver
      to make personal calls.  The Tele Aid system only allows the driver to communicate with the call
25    centers.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

DAL:337901.3

A-1

15924.1

1      (1)      the Tele Aid system will automatically contact the ATX response center upon

2   deployment of the vehicles' airbags or initiation of the vehicle's supplemental restraint system;

3      (2)      the customer can push one of three buttons to get assistance as follows:

4         (i)      Panic SOS Button:  Routes the customer's call to the ATX
                   response center in Texas;

5         (ii)     Information Button: Routes the customer's call to a call
6                  center in Montfort, New Jersey, which is NOT operated by
                   ATX (except if it is the first call made and/or the account is
7                  in acquaintance status, it will automatically route to the
                   ATX response center);

8         (iii)    Wrench Button:  Routes the customer's call to the call
                   center in Montfort, New Jersey, which is NOT operated by
9                  ATX (except if it is the first call made and/or the account is
                   in acquaintance status, it will automatically route to the
10                 ATX response center).

11     (3)      the customer can request ATX to assist in locating the automobile, if stolen.

12      When the customer's call goes to the call center in New Jersey, the operators located at

13   the call centers there pull up the same information (which shows the monitoring activity

14   requested by the FBI as Tele Aid in a vehicle recovery mode) that the ATX response center

15   operators have in Texas.   ATX has no control over these operators and no way of knowing what

16   they might say to the customer if he or she calls in.

17      ATX's role in regard to the Tele Aid system is for ATX operators to answer customers'

18   calls and provide requested information and assistance.  The Tele Aid system does not allow the

19   customer to communicate with any party other than the designated Texas and New Jersey call

20   centers which are run by the different companies.    Again, any cellular airtime used by the

21   customer is provided by AT&T, not ATX.  The Tele Aid system automatically prioritizes calls.

22   Calls involving use of an airbag or restraint system in an accident situation or those calls in

23   which a customer presses the Panic SOS button requesting assistance are priority-1 calls and may

24

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

DAL:331901.3

A-2

15924.1

1    cut off other calls (for example those involving requests for driving information or to locate

2    stolen vehicles).

3        The ATX response center personnel are not just phone operators; rather, they are

4    specially trained to handle requests for emergency assistance and to work with local emergency

5    response providers (for example 911 and local police) to ensure that customers who have been in

6    an accident receive adequate assistance.  Because of the coordination that must be done with

7    local emergency response providers and the injured parties, responding to an emergency call can

8    require the full attention of up to three ATX response center operators.

9    B.    *Operating in Stolen Vehicle Recovery Mode*

10        As a secondary service, ATX can assist the customer in locating a stolen vehicle on

11    verification that a police report has been filed.  To locate the vehicle, the response center sends a

12    signal to the Tele Aid system in the automobile.  The signal will be continuously sent until the

13    automobile responds or until the stolen vehicle recovery mode is manually deactivated by ATX.

14    The Tele Aid system will not respond if the automobile's engine is turned off or the automobile

15    is shielded due to atmospheric or geographic conditions which normally prevent cellular

16    connections from being completed (for example by a tunnel or a garage).

17        If the automobile's engine is running and not shielded, the Tele Aid system in the

18    automobile will call the ATX response center using cellular airtime provided by AT&T.  The

19    return call from the automobile will be automatically directed to the next available operator at

20    the ATX response center.  ATX does not have any way to determine when a call will come or to

21    direct the call to a specific operator.  Once a call from the Tele Aid system in the automobile is

22    answered by the ATX response center personnel, the operator can hear noises (including

23    conversations) inside of the automobile.  If there are no intervening circumstances, the call

24    remains connected until the call is terminated by the response center upon confirmation from law

25

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

A-3

DAL:337901.3

15924.1

1    enforcement that the vehicle has been recovered.   Intervening circumstances such as the

2    occurrence of shielding or atmospheric interference or a higher priority call being received could

3    result in termination of the recovery vehicle call.

4        When the vehicle recovery mode is turned off, one of two things will occur that can let

5    the customer and others in the automobile know that the Tele Aid has been activated:

6        (i)    If the radio in the vehicle is on at the time the vehicle
7               recovery mode is turned off, the radio will be muted and its
               text and graphics screen will display an icon reading "Tele
8               Aid Active" on the front panel;

        (ii)   If the radio is not on when the vehicle recovery mode is
9               turned off, the Tele Aid system will emit a beeping tone.
               This tone will be emitted whether or not the vehicle is
10              running at the time the vehicle recovery mode is turned off.

11

12       Because it is a function of the physical system, the ATX response center has no way to

13   stop the Tele-Aid equipment from signaling the customer that it has been activated as described

     above.

14

15       ATX  initiates contact with the automobile only at the request of a customer in the event

16   that the vehicle has been stolen and after confirmation of a police report regarding the theft

17   having been filed.  ATX, as a matter of practice and policy, will not initiate vehicle recovery

     without proof that the crime of vehicle theft has occurred.

18

19

20

21

22

23

24

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

25

DAL:337901.3

A-4

15924.1

Ex. B

1  BENNEE B. JONES
   Texas State Bar No. 17855450
2  benneejones@akllp.com
   THERESA GEGEN
3  Texas State Bar No. 00793791
   1717 Main Street, Suite 3700
4  Dallas, Texas 75201
   (214) 659-4400
5  (214) 659-4401 (Fax)

6  FRED PETTI
   Arizona Bar No.011668
7  Fpetti@lrlaw.com
   LEWIS AND ROCA LLP
8  40 North Central Avenue, Suite 1900
   Phoenix, Arizona 85004
9  (602) 262-5311
   (602) 262-5474
10 Resident Nevada Counsel

11 JASON M. KERR
   Nevada Bar No. 7773
12 jkerr@lrlaw.com
   LEWIS AND ROCA LLP
13 Suite 600
   3993 Howard Hughes Parkway
14 Las Vegas, Nevada 89109
   (702) 949-8200
15 (702) 949-8351 (fax)

16 Attorneys for ATX Technologies, Inc.

17                    UNITED STATES DISTRICT COURT

18                     FOR THE DISTRICT OF NEVADA

19 IN THE MATTER OF THE APPLICATION        §
   OF THE UNITED STATES FOR AN ORDER       §      CCA 171XX, LDG
20 AUTHORIZING THE ROVING INTERCEPTION  §       (FIELD CASE)
   OF ORAL COMMUNICATIONS                  §
21

22        UNDER SEAL: AFFIDAVIT OF JIMMY STOVALL IN SUPPORT OF
              ATX'S MOTION TO RECONSIDER AND MOTION TO QUASH,
23     THE COURT'S JANUARY 11, 2002 ORDER AND TO RECONSIDER THE COURT'S
           ORDER DATED DECEMBER 21, 2001 DENYING ATX'S MOTION
24              TO QUASH THE DECEMBER 10, 2001 ORDER

25

1    STATE OF TEXAS              §
                                 §
2    COUNTY OF DALLAS            §

3         Before me, the undersigned authority in the State of Texas, personally appeared Jimmy

4    Stovall, for ATX Technologies, who testified as follows:

5         1.      My name is Jimmy Stovall.  I am over eighteen (18) years of age, am  competent

6    to make this affidavit, and I have personal knowledge of the facts stated herein.  I swear that the

7    facts in this affidavit are true and correct.

8         2.      I currently work for ATX Technologies, Inc. ("ATX") as the Director of

9    Operations.  I have been employed by ATX since 5-20-90.  In this capacity, I am responsible for

10   the supervising and monitoring the ATX Response Center in Texas which includes employee

11   problems, feedback, staff development, training, technology changes, hiring, de-hiring,

12   communicating, prioritizing, planning, strategic planning and budgeting.

13        3.      ATX is not a telephone company.  ATX does not provide its customers with

14   cellular air time that would allow the customer to make mobile phone calls.

15        4.      ATX is a very small company (approximately 300 employees) and has very

16   limited resources.

17        5.      ATX staffs a 24 hour response center to respond with information and assistance

18   to customers who contact ATX through the Tele Aid equipment.  The Tele Aid equipment is

19   built into certain automobiles (including Mercedes Benz) for the purpose of providing security

20   and convenience features to the vehicle owners.

21        6.      The Tele Aid equipment functions in combination with Global Positioning

22   Systems and cellular technology to provide the customer with a variety of security and

23   convenience features through two distinct call centers, such as obtaining emergency responses in

24   the event of an accident, directions, roadside assistance, and stolen vehicle location.

25

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:342760.1

2

15924.1

1    7.    The Tele Aid system is manufactured by Motorola and installed by Mercedes

2    Benz.

3    8.    Any cellular airtime that is used by the customer who uses the Tele Aid system is

4    supplied by AT&T – not ATX.

5    9.    The Tele Aid system does not allow the customer to make cellular telephone calls

6    from their automobile to third parties.   The Tele Aid system only allows the customer to

7    communicate with specific call centers (the ATX center and the Montfort, NJ center).

8    10.    The Tele Aid system is different than OnStar system (which is used by Cadillac),

9    because Tele Aid does *not* have the Personal Calling feature (which allows OnStar customers to

10   make personal calls using their system).

11   12.    The Tele Aid system is designed to be a safety and security system which is

12   solely responsive to an airbag deploying or the customer pushing one of the three buttons

13   described below.

14   13.    Once the automobile purchaser subscribes to the Tele Aid system, the equipment

15   permits the following types of assistance:

16   (1)    the Tele Aid system will automatically contact the ATX response center upon

17   deployment of the vehicles' airbags or initiation of the vehicle's supplemental restraint system;

18   (2)    the customer can push one of three buttons to get assistance as follows:

19
     (i)    Panic SOS Button:  Routes the customer's call to the ATX
20          response center in Texas;

21   (ii)   Information Button: Routes the customer's call to a call
            center in Montfort, New Jersey, which is NOT operated by
            ATX (except if it is the first call made and/or the account is
22          in acquaintance status, it will automatically route to the
            ATX response center);
23
     (iii)  Wrench Button:  Routes the customer's call to the call
24          center in Montfort, New Jersey, which is NOT operated by
            ATX (except if it is the first call made and/or the account is
25

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:342760.1

3

15924.1

in acquaintance status, it will automatically route to the ATX response center).

    (3)    the customer can request ATX to assist in locating the automobile, if stolen.

    14.    When the customer's call goes to the call center in New Jersey, the operators located at the call centers there pull up the same information (which shows the monitoring activity requested by the FBI as Tele Aid in a vehicle recovery mode) that the ATX response center operators have in Texas. ATX has no control over these operators and no way of knowing what they might say to the customer if he or she calls in.

    15.    ATX's role in regard to the Tele Aid system is for ATX operators to answer customers calls and provide requested information and assistance.

    17.    The ATX response center personnel are not just phone operators; rather, they are specially trained to handle requests for emergency assistance and to work with local emergency response providers (for example 911 and local police) to ensure that customers who have been in an accident receive adequate assistance. Because of the coordination that must be done with local emergency response providers and the injured parties, responding to an emergency call can require the full attention of up to three ATX response center operators.

    18.    As a secondary service, ATX can assist the customer in locating a stolen vehicle on verification that a police report has been filed. To locate the vehicle, the response center sends a signal to the Tele Aid system in the automobile. The signal will be continuously sent until the automobile responds or until the stolen vehicle recovery mode is manually deactivated by ATX.

    19.    The Tele Aid system will not respond if the automobile's engine is turned off or the automobile is shielded due to atmospheric or geographic conditions which normally prevent cellular connections from being completed (for example by a tunnel or a garage).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:342760.1

4

15924.1

20.     If the automobile's engine is running and not shielded, the Tele Aid system in the automobile will call the ATX response center using cellular airtime provided by AT&T.  The return call from the automobile will be automatically directed to the next available operator at the ATX response center.  ATX does not have any way to determine when a call will come or to direct the call to a specific operator.

21.     Once a call from the Tele Aid system in the automobile is answered by the ATX response center personnel, the operator can hear noises (including conversations) inside of the automobile.  If there are no intervening circumstances, the call remains connected until the call is terminated by the response center upon confirmation from law enforcement that the vehicle has been recovered.  Intervening circumstances such as the occurrence of shielding or atmospheric interference being received could result in termination of the recovery vehicle call.

22.     When the vehicle recovery mode is turned off, one of two things will occur that can let the customer and others in the automobile know that the Tele Aid has been activated:

   (i) If the radio in the vehicle is on at the time the vehicle recovery mode is turned off, the radio will be muted and will display "Tele-Aid Active" on the front panel, if so equipped with the command screen;

   (ii) If the radio is not on when the vehicle recovery mode is turned off, the Tele Aid system will emit a beeping tone. This tone will be emitted whether or not the vehicle is running at the time the vehicle recovery mode is turned off.

23.     Because it is a function of the physical system, the ATX response center has no way to stop the Tele-Aid equipment from signaling the customer that it has been activated as described above.

24.     During the time the government is using the line, the customer is blocked from using his ATX services.  If the customer pushes a call button or the airbag deploys, he will not be able to access ATX services because the signal will be blocked by the FBI's use of the line.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
DAL:342760.1

5

15924.1

1   Only after the FBI releases the line and ATX attempts to disconnect will ATX learn that a signal

2   was sent.  If the FBI is actually listening at the time the signal is sent, the FBI may be aware of

3   the signal.  In order for ATX to respond, the FBI will have to immediately contact ATX.  In any

4   event, there will be an unacceptable delay or denial of ATX services to the customer.

5          25.     ATX  initiates contact with the automobile only at the request of a customer in the

6   event that the vehicle has been stolen and after confirmation of a police report regarding the theft

7   having been filed.  ATX, as a matter of practice and policy, will not initiate vehicle recovery

8   without proof that the crime of vehicle theft has occurred.

9          26.     ATX has put a comment on the file, that the operators are not to discuss the

10   vehicle recovery mode with the customer.  In the past, ATX has tried to put in special procedures

11   at the request of specific customers (for example a customer with a car in the shop will request

12   that ATX response center not send a response to an alarm).  ATX's experience with these special

13   procedures has been that they have not worked.

14          27.     The customer care center operators respond to inquiries from customers about

15   general services, account status and billings.  These operators are reached, not through the Tele

16   Aid system, but through a land line 1-800 number. When a call comes in from a customer, it can

17   come into any of approximately 22 operators, who handle up to 800 calls a day. When a

18   customer calls, the operators activate a computer screen that pulls up the customer's account

19   information – in this case the screen will not show the Tele Aid monitoring, but because the

20   billing account has been shut off, it will not show any activity.  Currently, this account file

21   contains a notation to call a supervisor to handle any contact.

22          28.     ATX does not send paper invoices or bills to its customers.  ATX customer are

23   required to provide it with a means to accomplish electronic billing, either a credit card number

24   or a debit account number.  The airtime charges are automatically downloaded in a batch form

25   from AT&T into ATX's billing system.  ATX believes that it has solved the key billing issue

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109
DAL:342760.1

6

15924.1

1  involved: namely, that the customer is charged for airtime for the tracking. However, ATX's

2  solution is a temporary fix at best because it solution involves completely shutting down the

3  customer's account.

4        29.    This particular customer's account is up for renewal on February 23, 2002. Under

5  ATX's agreement with the customer, ATX must send the customer a renewal before his contract

6  is up. The renewal letter encourages the customer to renew by reviewing all of ATX's valuable

7  services. The possible renewal or non-renewal makes it more difficult for ATX to ensure

8  security.

9        30.    If the customer renews, ATX must reactivate his billing account for the renewal.

10  If the government is continuing to monitor his conversations, there is a very real risk that a bill

11  for the monitoring airtime will be automatically posted to the customer's credit card. In which

12  case, the customer will receive a credit card with a billing for "Tele Aid Services", and will

13  know that he did not operate the device.

14        31.    If the customer chooses not to renew, he must contact ATX (the renewal is

15  automatic unless the customer opts out of renewal by contacting ATX). The overwhelming

16  method not to renew is by contacting the ATX call center by telephone. This methods opens an

17  opportunity for the call center personnel to inadvertently disclose the monitoring when they

18  attempt to discuss the customer's reasons for non-renewal.

19        32.    The focus of ATX and all of its operations is on responding to customer needs.

20  Further, Affiant says not.

21

22                                    Jimmy Stovall

23

24        SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the

25  7 day of February , 2002.

1

2      [seal]

3

Candy Speakmon
_____
Notary Public in and for the State of Texas

Printed Name: Candy Speakmon

Commission Expires: 4-2-2002

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109
DAL: 342760.1

8

15924.1